1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLANDO ARREDONDO, | Case No. 1:14-cv-02097-EPG |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.  INTRODUCTION

Plaintiff Rolando Arredondo ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Erica P. Grosjean.[1]  Upon a review of the entire record, the Court finds the Administrative Law Judge's decision is proper and is supported by substantial evidence in the record as a whole.  Accordingly, this Court affirms the agency's determination to deny benefits and denies Plaintiff's appeal.

---

[1] The parties consented to the jurisdiction of the Magistrate Judge. (ECF Nos. 6 and 7.)

## II.  BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff alleges disability due to depression, high blood pressure, tinnitus, wrist damage, arthritis, back injury, and loss of hearing.  AR 116.  On December 29, 2010 and January 4, 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning September 1, 2009.  AR 94-97, 476-487, 532.  Plaintiff's applications were denied initially and on reconsideration.  AR 53-55, 58-63.  Subsequently, Administrative Law Judge John Cusker (the "ALJ") held a hearing on February 15, 2013 (AR 525-551), and issued an order denying benefits on May 1, 2013.  AR 11-24. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  AR 6-8.

Plaintiff now challenges that decision, arguing that the ALJ: (1) improperly weighed the testimony of treating physicians; (2) failed to consider all of Plaintiff's impairments in creating the residual functional capacity determination; and (3) as the result of the incorrectly formulated residual functional capacity determination, posed incorrect hypotheticals to the vocational expert at the hearing.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a), 416.920(a).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

the claimant is or is not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The ALJ must

consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 404.1513, 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial

gainful activity during the period of alleged disability; (2) whether the claimant had medically-

determinable "severe" impairments;  (3) whether these impairments meet or are medically equivalent

to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the

claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5)

whether the claimant had the ability to perform other jobs existing in significant numbers at the

regional and national level. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

**A.  The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ

determined that Plaintiff did not meet the disability standard.  AR 15-24.  More particularly, the ALJ

found that Plaintiff met the insured status requirements through December 31, 2013, and that he had

not engaged in any substantial gainful activity since September 1, 2009, the alleged disability onset

date.  AR 16.  Further, the ALJ identified sciatica secondary to degenerative disc disease of the

lumbar spine, gout, and alcohol abuse as severe impairments.  AR 16.  Nonetheless, the ALJ

determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1.  AR 17.

Based on his review of the entire record, the ALJ determined Plaintiff's RFC and imposed

the following limitations:

> The claimant has the residual functional capacity to lift and carry 50 pounds
> occasionally and 25 pounds frequently.  He is able to stand and/or walk for a total of
> six hours and sit for six hours in an eight-hour workday.  He is able to frequently
> crouch, crawl, and climb.

AR 18.

After considering the testimony of a vocational expert, the ALJ determined that Plaintiff is

capable of performing past relevant work as a farm equipment mechanic.  AR 22.  He also

determined Plaintiff could perform other jobs that exist in significant numbers in the national

economy.  AR 22.  As a result, Plaintiff was not disabled under the Social Security Act.  AR 23.

**IV. SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**V.  DISCUSSION**

**A.  Medical Record**

The medical evidence that relates to the issues raised in this appeal is summarized below.

### *i.    Treatment*

In March 2000, Jay Sumner, PA-C, treated Plaintiff for back and neck pain.  AR 250-251.  Plaintiff was involved in a motor vehicle accident eleven months prior to the examination and had been seeing a chiropractor.  AR 251.  X-rays of Plaintiff's thoracic and cervical spine revealed normal findings with minimal degenerative changes.  AR 252.  In June 2002, a CT scan of Plaintiff's lumbar spine revealed L5-S1 disc herniation with impingement on the left S1 nerve root.  AR 423.

In November 2004, Plaintiff's right wrist suffered a "crushing-time injury" during a work-related incident.  AR 326-327.  Upon evaluation, Plaintiff was unable to use his right hand and had considerable swelling.  AR 326.  Cyril Rebel, M.D., diagnosed a small avulsion fracture, dorsum of the capitate, and recommended that Plaintiff see an occupational therapist and use a wrist brace.  AR 326-327.

On September 2, 2005, Plaintiff's right ring finger was crushed and nearly amputated during a work-related incident.  AR 179, 351-352.  Plaintiff required surgery and was referred to an occupational therapist for hand therapy.  AR 179-180.  Following the surgery, Plaintiff began getting regular treatment from Hongshik Han, M.D.  AR 179, 211-222.  On September 7, 2005, Dr. Han opined that Plaintiff's wound was healing well.  AR 222.  In June 2006, Dr. Han noted that all of Plaintiff's wounds are completely healed and Plaintiff is performing normal daily activities without any restriction.  AR 214.  However, Plaintiff complained of cold sensitivity in his right ring fingertip and reported severe dorsal radial wrist pain. AR 211, 214.  In August 2006, Dr. Han noted moderate swelling on Plaintiff's right dorsal wrist.  AR 211.  Moreover, during subsequent appointments, Plaintiff reported that moving his wrist created significant pain and discomfort.  AR 213.  Plaintiff was instructed to wear a protective splint on his right hand at all times.  AR 213.  On December 29, 2006, exploratory surgery confirmed a tear in Plaintiff's right scapholunate interosseous ligament.  AR 203.  In February 2007, Dr. Han discussed Plaintiff's treatment options and Plaintiff declined further surgery.  AR 212.  Plaintiff was also diagnosed with gout and hypertension. AR 239, 244-246.

Plaintiff received regular treatment at health clinics and Madera Community Hospital.  AR 289-475.  In April 2011, Plaintiff reported hip and ear pain, and deafness in his left ear.  AR 340.  In May 2011, Plaintiff complained of back and hip pain.  AR 319, 320.  An X-ray of Plaintiff's lumbar spine revealed "satisfactory alignment" of the vertebral bodies and posterior elements; no acute fracture or dislocation; multilevel degenerative changes; and sclerosis in the left supra-acetabular ileum.  AR 308.  Plaintiff was also diagnosed with gout and reported hip pain in June 2011.  AR 315-316.  Plaintiff reported lower back pain radiating down to his left leg in October 2011.  AR 309. In November 2011, a CT scan revealed L5-S1 disk bulging and posterior disk narrowing, and degenerative changes in the lumbar spine.  AR 471.

In January 2012, Dr. Rebel treated Plaintiff for left hip pain.  AR 402.  An X-ray of Plaintiff's pelvis and left hip showed no evidence of acute fracture or dislocation; mild degenerative changes; rounded areas of sclerosis, osteomas, or bone island involving the supraacetabular illac bone on the left and superior ramus; and an intact pelvic ring.  AR 429.  In May 2012, Plaintiff was

examined by Bruce Noyes, PA-C.  AR 465-467.  Plaintiff reported hip pain that radiated down to his foot.  AR 465.  In addition, Plaintiff was treated for lumbago, hyperlipidemia, hypertension, and thigh and pelvic pain.  AR 466.  Mr. Noyes administered Toradol and instructed Plaintiff to avoid heavy lifting.  AR 466.  Moreover, upon a general physical examination of Plaintiff's ears, Mr. Noyes opined that Plaintiff's hearing was "grossly normal."  AR 466.

In June 2012, Melody Simpano, NP, noted that Plaintiff's severe pain had not been relieved by medications.  AR 454.  Plaintiff also reported a previous left ear surgery.  AR 454.  In August and September 2012, Plaintiff was treated for lumbago, a L4-L5 disc bulge, and left hip pain.  AR 446-449.  In September 2012, Dr. Rebel diagnosed Plaintiff with arthritis of the lumbar spine and chronic pain.  AR 443.  In October 2012, Christopher Horton, PA-C, treated Plaintiff for lumbago, chronic pain, and radiculopathy.  AR 439.  In November 2012, an MRI revealed a discogenic disease at the mid to distal lumbar spine.  AR 431.

### ii.    Consultative Examiners

On July 3, 2011, Mary Lewis, Psy.D., examined Plaintiff and performed a psychiatric evaluation.  AR 260-265.  During the evaluation, Plaintiff was cooperative and complained of pain in his left hip and right hand.  AR 260-261.  Dr. Lewis opined that Plaintiff's judgment and insight was within normal limits, and his fund of knowledge was below average.  AR 263.  Dr. Lewis also diagnosed Plaintiff with alcohol abuse.  AR 264.  Dr. Lewis concluded that Plaintiff had the ability to manage his own funds, understand and remember short and simple instructions, maintain concentration and attention, accept instructions from a supervisor and respond appropriately, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions, and deal with various workplace changes.  AR 264.

On July 18, 2011, Fariba Vesali, M.D., examined Plaintiff and performed a comprehensive orthopedic evaluation.  AR 272-275.  During the evaluation, Plaintiff reported low back pain.  Dr. Vesali diagnosed Plaintiff with chronic low back pain and possible left sacroiliac joint dysfunction. Dr. Vesali further noted that Plaintiff has a history of gout and right big toe arthritis.  Dr. Vesali concluded that Plaintiff is able to: walk, stand, and sit six hours in an eight-hour day with normal breaks; ambulate without assistance; lift and carry fifty pounds occasionally and twenty-five pounds

frequently; and frequently crouch, crawl, and climb.  AR 275.  In addition, Dr. Vesali noted that Plaintiff does not require any manipulative limitations or other workplace environmental limitations. AR 275.

### iii.    State Agency Medical Consultant Opinions

In August 2011, Steve Owens, M.D., reviewed Plaintiff's medical record and determined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; push and pull without limitations; and stand, walk and sit for six hours in an eight-hour workday.  AR 282. Dr. Owens also concluded that it was not necessary to impose any postural, manipulative, environmental, or communicative limitations.  AR 283-285.  In March 2012, A. Khong, M.D., reviewed Plaintiff's medical record and affirmed Dr. Owen's findings.  AR 425-428.

### B.  The ALJ's Assessment of the Medical Opinions is Supported by Substantial Evidence

#### i.    The ALJ's Findings

The ALJ summarized Plaintiff's medical impairments and evaluated the doctors' opinion evidence as follows:

> I accord great weight to Dr. Vesali's Opinion.  It is consistent with her examination findings and with the medical evidence.  She is a board specialist in physical medicine and rehabilitation, which enhances her reliability.

> Thus, the evidence shows that the claimant has sciatica and degenerative disc disease of the lumbar spine, but findings on the physical examinations were inconsistent regarding gait and straight leg raising tests.  Further, the consultative examination found very little wrong, and noted positive Waddell's signs, which can suggest symptom magnification.  I find that Dr. Vesali's opinion and the opinions of the State agency consultants are most consistent with the medical evidence.

AR 19-20.

#### ii.  Legal Standard for Medical Opinions

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals.  *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

### iii.   Analysis

There is no dispute regarding the content of the medical records or the doctors' opinions. Instead, the parties are disputing the weight that the ALJ accorded the physicians' opinions, and the interpretation of the medical record. Specifically, Plaintiff argues that the ALJ improperly discounted the opinion of all treating physicians by stating that the physical examinations regarding gait and straight leg raising tests were inconsistent. (Plaintiff's Opening Brief 7:23-28, ECF No. 13; Plaintiff's Reply Brief 4:3-8, ECF No. 18). The Court disagrees.

As noted above, Plaintiff was treated by several physicians and health care personnel between 2000 and 2013. Plaintiff correctly notes that medical reports diagnosed hip pain, lower back pain, sciatica, arthritis, compressed nerve of the spine, hearing loss and radiculopathy. Moreover, the ALJ did not afford any particular weight to the treating physicians. The Court finds that the ALJ did not discount the testimony of the treating physicians by pointing out the inconsistency regarding Plaintiff's gait and straight leg testing. Instead, the ALJ was simply demonstrating why the restrictions imposed by examining and non-examining physicians are consistent with the medical evidence. In other words, the limitations imposed by the examining and non-examining physicians did not contradict the opinions of the treating physicians. Since the ALJ

8

did not discredit the treating physicians' opinions, Plaintiff has failed to identify any error. *See McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (party seeking reversal bears the burden of establishing harmful error). It is well within the ALJ's discretion to weigh and harmonize the evidence in the medical record. 20 C.F.R. §§ 404.1546(c), 416.946(c).

Moreover, because the majority of the medical reports "did not contain any functional limitations, they were not probative as to what kind of work plaintiff could perform despite his impairments and, therefore, the ALJ was not required to formally assess, or even discuss, them." *Corso v. Colvin*, 2014 WL 950029, *10 (D. Or. Mar. 11, 2014) (citations omitted). This is because an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (Medical records that "make only limited references to medically observed limitations on functional capacity…fall short of the substantial medical evidence required to establish a disability."); *Meanel*, 172 F.3d at 1113-14; *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ did not err in failing to discuss or afford weight to medical reports that were not significant probative evidence). Thus, for example, a single reference to Plaintiff's apparent discomfort in sitting during a doctor's visit (*see* AR 337) need not constitute substantial evidence of a disability.

Plaintiff also does not specify any additional restrictions that result from the treating physicians' opinions and there is no medical evidence in the record providing that Plaintiff's impairments created functional limitations beyond those already identified in the RFC. Plaintiff points to treatment notes that instruct Plaintiff to avoid strenuous activity and heavy lifting. (Plaintiff's Reply Brief 4:1-2; ECF No. 18). However, the ALJ considered these limitations in formulating the RFC and imposed lifting and carrying restrictions accordingly. AR 18.

### C. The ALJ's RFC Determination is Supported by Substantial Evidence

The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five

1   days a week, or equivalent work schedule.  SSR 96-8p.  "The RFC assessment considers only

2   functional limitations and restrictions that result from an individual's medically determinable

3   impairment or combination of impairments."  *Id.*   "In determining a claimant's RFC, an ALJ must

4   consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and

5   the effects of symptoms, including pain, that are reasonably attributed to a medically determinable

6   impairment." *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citations and

7   internal quotation marks omitted).  In other words, an ALJ only needs to consider impairments

8   supported by objective evidence in the record in crafting an RFC.  *Bayliss v. Barnhart*, 427 F.3d

9   1211, 1217 (9th Cir. 2005).

10   Plaintiff asserts that the ALJ's RFC determination was improper, because the ALJ failed to

11   account for the Plaintiff's chronic pain and hearing loss.  (Plaintiff's Opening Brief 8:15-16, ECF

12   No. 13).  However, as noted above, nothing in the record, including the treating physicians' medical

13   records, suggests that Plaintiff is unable to perform work consistent with the RFC.  While the record

14   indicates that Plaintiff experiences some chronic pain and is deaf in his left ear (AR 314, 336-338,

15   340, 401, 435-436),  the record is otherwise devoid of any functional limitations associated with

16   chronic pain or hearing.  Similarly, Plaintiff does not identify what further restrictions result from his

17   deafness and chronic pain.  *See Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845-46

18   (9th Cir. 2012) ("The ALJ was not required to discuss…alleged medical conditions in the absence of

19   significant probative evidence that [the medical impairments] had some functional impact on [a

20   claimant's] ability to work.").  Therefore, Plaintiff is unable to demonstrate that his loss of hearing or

21   chronic pain had any limiting effect on his ability to work.  The Court finds that the ALJ's RFC

22   determination accounts for all well-supported limitations in the record.

23   **D.  Reliance on the Vocational Expert's Testimony was Proper**

24   "Hypothetical questions posed to the vocational expert must set out all the limitations and

25   restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

26   The testimony of a vocational expert ("VE") "is valuable only to the extent that it is supported by

27   medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion

28   about a claimant's residual functional capacity has no evidentiary value if the assumptions in the

hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422. An ALJ is thus only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

For the reasons stated above, the hypothetical that the ALJ posed to the VE included all of the limitations that the ALJ found credible and supported by substantial evidence in the record. Therefore, the ALJ's reliance on testimony the VE gave in response to the hypothetical was proper. *See Magallanes*, 881 F.2d at 756-57 (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).

**VI. CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not disabled as defined by the Social Security Act is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, the Commissioner of Social Security, and against Plaintiff Rolando Arredondo.

IT IS SO ORDERED.

Dated:   **March 24, 2016**            /s/ *Erica P. Groje*
                                     UNITED STATES MAGISTRATE JUDGE